MODERN ELECTRIC COMPANY, INC. v. S. E. DENNIS, T/A DENNIS MOTOR SERVICE.

(Filed 16 June, 1961.)

**1. Pleadings § 25—**

The broad discretionary power of the trial court to allow amendments to pleadings extends before trial, and during trial when the circumstances afford the adverse litigant fair opportunity to investigate and rebut any new matter, to amendments in furtherance of justice upon such terms as the court deems proper; while after trial, or when the adverse party has no opportunity to investigate and rebut any new matter, the court's power to allow amendments is restricted to those which do not substantially change the claim or defense but merely amend the allegations to conform to the proof. G.S. 1-163.

**2. Pleadings § 7—**

A defendant may set up in his answer as many defenses as he has, and it is not required that the defenses be consistent. G.S. 1-138.

**3. Pleadings § 25—**

The allowance of an amendment to the answer to correct mistakes.

as to the facts alleged in the original answer and to set forth what de-
fendant contends are the true facts, which amendment is allowed some
two months prior to trial, rests in the discretion of the trial court even
though the facts as alleged in the amendment are contradictory to those
alleged in the original answer and vary the defense, and the denial of
plaintiff's motion to strike such amendment will not be disturbed, the
amended answer being relevant and germane to the subject of action
set out in the complaint.

**4. Bailment § 1—**

Evidence in this case is held not to show the relationship of bailee and
bailor.

**5. Negligence § 1—**

Negligence is the breach of duty to exercise that care which an ordi-
narily prudent person would exercise under similar circumstances when
injury to person or property is reasonably foreseeable as a result of such
breach of duty.

**6. Negligence § 24a—    Whether defendant was negligent in performance
of contract held for jury upon the evidence.**

The allegations and evidence favorable to plaintiff tended to show
that defendant's agent, operating defendant's crane truck, was engaged
in hoisting plaintiff's machinery to the second floor of a building pursuant
to a contract between plaintiff and defendant, that the I beam on the
building, to which the cables were attached by a beam clamp, began
bending and twisting with the strain, that the operator lowered the
machinery and substituted a sling cable for the beam clamp, and that
when the machinery had again been hoisted to about the second floor
the sling cable broke, with permissible inference that it was cut by a
sharp edge on the I beam. The evidence further tended to show that
defendant's operator was the sole agent of defendant upon the job
and that he did not examine the I beam to see if it had any sharp edges,
either initially or after it had been bent or twisted. Held: The evi-
dence is sufficient to carry the case to the jury on the theory of defend-
ant's negligence.

**7. Appeal and Error § 42—**

The court submitted the issues of bailment, negligence, contributory
negligence, and damages to the jury. The issue of bailment was inap-
posite but the allegations and evidence made out a case of negligence.
Instructions that if the jury answered the first issue "No" it need not
consider any of the other issues must be held for prejudicial error upon
a negative finding by the jury to the first issue and the failure to answer
the other issues, even though correct instructions were given in other
parts of the charge.

APPEAL by plaintiff from *Williams, J.,* Regular January 1961 Civil
Term of DURHAM.

Civil action to recover for damages to an electric switchboard, which

fell when it was being lifted by defendant with a crane truck to the second floor of a new addition to the Herald Sun Building in the city of Durham for installation.

The following issues were submitted to the jury:

> "1. Was there a bailment of the electric switchboard from the plaintiff to the defendant, as alleged in the Complaint?
>
> "2. Was the plaintiff's switchboard damaged by the negligence of the defendant, as alleged in the Complaint?
>
> "3. Did the plaintiff, by its own negligence, contribute to the damage of the switchboard, as alleged in the Answer?
>
> "4. What amount, if any, is the plaintiff entitled to recover of the defendant?"

The jury answered the first issue No, and did not answer the other issues.

From a judgment that plaintiff recover nothing from defendant, plaintiff appeals.

*Haywood & Denny and George W. Miller, Jr., for plaintiff, appellant.*

*Bryant, Lipton, Strayhorn & Bryant and F. Gordon Battle for defendant, appellee.*

PARKER, J.   Plaintiff alleged in its complaint in substance: On 22 August 1957 plaintiff and defendant entered into a contract whereby defendant would unload an electric switchboard of large size and heavy weight from a truck, and then hoist it to the second floor of a new addition to the Herald Sun Building in the city of Durham, and there deliver it in good condition to plaintiff for installation. Defendant was to provide all necessary equipment, to manage and supervise the entire operation, and to have sole control and authority over it. Plaintiff delivered the electric switchboard to defendant in perfect condition, who set about hoisting it with his crane truck and with attached lines and cables to the second floor of the building. While it was being hoisted, due to defendant's negligence, it fell to the ground, and was badly damaged. Defendant was negligent in the following respects: He failed to exercise reasonable care in the hoisting of the electric switchboard; he failed to supervise and to manage properly the hoisting of the electric switchboard; he failed to provide proper and adequate equipment to do the work; he failed to exercise that care for the protection of plaintiff's property required of him as a bailee.

Defendant in his answer admitted there was an agreement be-

tween plaintiff and himself, whereby he was to perform certain services for plaintiff, but denied that these are accurately set forth in the complaint, admitted he was to provide all necessary equipment, to manage and supervise the entire operation, and to have sole control and authority over it, and then entered general denials. In his further answer he alleges in substance: While his agent was attempting to hoist the electric switchboard in a proper manner, he was interfered with by an employee of plaintiff, who stopped his agent and directed that the work be done in a different way. Plaintiff's agent and employee and manager put a cable around a steel beam and hooked a block in the cable, and then directed his agent to hoist the electric switchboard. The method of work chosen by his agent was safe and the work would have been done satisfactorily had not his agent been stopped by plaintiff's manager and agent, and ordered to do the work in a different manner. If the electric switchboard was caused to fall by reason of any negligence, the negligence was that of plaintiff and not himself, and bars any recovery by plaintiff. And further, if he was negligent in any way, which he denies, plaintiff was guilty of contributory negligence.

Some ten months after the filing of his answer, Judge Hall on 12 August 1959 allowed defendant, on his motion, to file an amendment to his answer, and he filed such an amendment on 12 August 1959. When the amendment to the answer was filed, plaintiff on 31 August 1959 moved to strike out the amendment to the answer on the ground that its allegations "are irrelevant, redundant, impertinent, immaterial, evidentiary, and allege legal conclusions; that said allegations substantially change the defense heretofore set forth and sworn to in the answer heretofore filed, and are prejudicial to the plaintiff." On 12 November 1959 defendant filed an affidavit, which states in relevant part in substance: He has read plaintiff's motion to strike certain portions of the amendment to his answer. He is under the impression that he explained to his lawyers that on this particular job he merely rented his equipment to plaintiff, and is under the impression that his answer had been drawn on that basis. However, in preparing the case for trial several weeks ago, he read and studied his answer and immediately realized that it did not correctly set forth the facts, and requested his lawyers to amend his answer. The amendment was made in order that his answer might speak the truth. His purpose was to correct an error, and not to assert an inconsistent defense. Judge Hall on 16 November 1959 allowed plaintiff's motion as to three parts of the amendment to the answer, and denied it as to two parts. Plaintiff excepted to the denial of its motion to strike as to two parts of the amendment to the answer, and assigns this as error.

The allegations, which Judge Hall refused to strike out are in substance: His operator had no supervision or control over the manner in which the work was to be done, but reported to plaintiff's foreman. Plaintiff's agents and employees chose the method in which the tackle and rigging were to be used, and if the method chosen by plaintiff's foreman was unsafe and negligent, the negligence was that of plaintiff and not of him, and bars any recovery on plaintiff's part. He was employed to furnish to plaintiff a hoist and operator at so much rent per hour, and plaintiff was to furnish all labor and supervision, including the manner of doing the work. And further, if he was in any way negligent, which he denies, then plaintiff was guilty of contributory negligence.

G.S. 1-163 vests in the judge broad discretionary powers to permit amendments to any pleading, process or proceeding either before or after judgment. *Dobias v. White,* 240 N.C. 680, 83 S.E. 2d 785; *Bailey v. McPherson,* 233 N.C. 231, 63 S.E. 2d 559; *Garrett v. Trotter,* 65 N.C. 430. This statute provides in pertinent part as follows: "The judge or court may, before and after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading . . . by correcting a mistake in the name of a party, or a mistake in any other respect; by inserting other allegations material to the case; or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the fact proved."

The Court said in *Perkins v. Langdon,* 233 N.C. 240, 63 S.E. 2d 565: "An analysis of this statute lends support to the view that the scope of the court's power to allow amendments is broader when dealing with amendments proposed before trial than during or after trial. The statute contains alternate provisions . . . . It would seem that a fair interpretation of the alternate provision, '*or when the amendment does not change substantially the claim*' (or defense), '. . . *by conforming the pleading or proceeding to the fact proved,*' is referable to amendments offered during or after trial for the purpose of conforming the pleadings to the facts proffered or admitted in evidence. The power to grant such tardily proposed amendments necessarily should be and is more restricted in scope than is the power to allow amendments offered prior to trial under circumstances which afford the other litigant ample opportunity to investigate and answer the new matter set up."

The other part of the statute confers upon the judge the power, "*in furtherance of justice, and on such terms as may be proper,*" to "*amend any pleading . . . by correcting a mistake in the name of a party, or a mistake in any other respect; by inserting other allegations material to the case.*" We interpret these portions of the statute "as

being intended to regulate the allowance of amendments before trial (or during trial under circumstances affording the adverse litigant fair opportunity to investigate and rebut any new matters brought in by way of amendment, even to the extent, if needs be, of granting a continuance for the term). This section of the statute confers upon the court broad, sweeping discretionary powers of amendment." *Perkins v. Langdon, supra.*

G.S. 1-138 provides in relevant part: "The defendant may set forth by answer as many defenses . . . as he has, whether they are of a legal or equitable nature, or both." A defendant may set up and rely upon contradictory defenses. *Hayes v. Wilmington,* 243 N.C. 525, 91 S.E. 2d 673.

*Light Co. v. Bowman,* 231 N.C. 332, 56 S.E. 2d 602, was a civil action for injunctive relief, here on a former appeal. After the opinion of the Court on the former appeal was certified down, the court below, on motion of defendants, permitted defendants to file an amendment to their answer. Plaintiff excepted. Thereupon, defendants filed an amendment pleading certain facts by way of estoppel. Plaintiff moved (1) to strike the amendment "for that the same is not amendatory of but is inconsistent with the original Answer and Amendments thereto, and for that all matters alleged in said Amendment to the Complaint are *res adjudicata*"; and (2) to strike certain portions of paragraphs 11, 12, and 13 thereof for that the facts alleged are immaterial, redundant, and repetitious. The motion was denied, and plaintiff appealed. The Court said: "The exception to the order permitting defendants to amend their answer is without merit. Whether the amendment should be allowed rested within the sound discretion of the court below. Citing authority. Its ruling thereon is not subject to review on appeal except for palpable abuse. Citing authority. The defendants are not required to be consistent. They may interpose various and contradictory defenses." The Court refused to reverse the order denying the motion to strike. See also *Hicks v. Nivens,* 210 N.C. 44, 185 S.E. 469; 71 C.J.S., Pleading, page 680.

Defendant, by permission of court, filed an amendment to his answer on 12 August 1959. Plaintiff's motion to strike the amendment was allowed in part and disallowed in part on 16 November 1959. The case was tried on its merits in January 1961. Plaintiff had plenary time to prepare its case for trial after its motion to strike the amendment to the answer was disallowed in part. Judge Hall did not abuse his discretion in permitting defendant to file an amendment to his answer to correct a mistake and to set out what he contends are the true facts, so that he can have his day in court. This did not prejudice plaintiff, or deprive it of any vested rights. The allegations in the

amendment to the answer, which Judge Hall refused to strike, are relevant and germane to the subject of action set out in the complaint. Plaintiff's assignment of error to the denial of its motion to strike the two parts of the amendment to the answer is overruled.

Plaintiff's evidence tends to show the following facts: Plaintiff and defendant entered into a contract whereby defendant, who is engaged in the business of moving and hoisting heavy equipment, was to hoist a large and heavy electric switchboard for plaintiff to the second floor of a new addition to the Herald Sun Building in the city of Durham. Defendant was to provide the equipment necessary and supervision for the work. On 22 August 1957 the electric switchboard was brought to the job site on a trailer truck. It was 90 inches high, 78 inches wide, 36 inches deep, and weighed about 3600 pounds. Shortly thereafter defendant's agent, Thomas A. Gooch, arrived at the site with a crane truck. No other employee of defendant was present at the scene. Gooch fastened cables around the electric switchboard, backed his crane truck up to the trailer truck, hooked his other cable onto the one around the electric switchboard, and pulled it down to the end of the trailer truck. Gooch then used the cable fastened to his crane to go over the large pulley fastened onto the top of the cable on the electric switchboard, lifted it off the trailer truck, and lowered it down close to the ground. Gooch was alone in the crane truck. J. W. Vaughan, president and manager of plaintiff, told Gooch two of his men would stay with the switchboard to keep it from swinging back and forth, while Gooch was driving the crane truck up an alley to where the hoisting was to take place. These two men did this, when Gooch drove up the alley, and stopped where the hoisting was to take place. When Gooch stopped, he lowered the switchboard to the ground, and took the cable loose from the top. He then took a beam clamp from his truck and threw it up to the second floor, where some of plaintiff's men were working, telling them to fasten the clamp to an I beam over the second floor of the building and supporting the third floor. Gooch then passed a pulley or snatch block up to swing from this hook, and then he passed his cable up from his winch drum, telling them to put it over the pulley, pulled it back down, and fastened it to the cable around the switchboard. There was a beam on the third floor directly over the beam on the second floor, so Gooch fastened an additional cable to the other cable to pull the switchboard away so it would not hang under the beam as he was hoisting it. Then Gooch began hoisting the switchboard. When the switchboard had been hoisted almost to the second floor, the I beam began bending, the flange on the I beam was beginning to twist a little from the strain being put on it. A popping sound was heard. Employees of plaintiff told Gooch

the beam was bending. Whereupon, Gooch lowered the switchboard to the ground, and gave one of plaintiff's employees a cable to take the place of the clamp, known as a sling. It was a large steel mesh cable that can be wrapped around the I beam and a block hooked into it. Gooch said: "Put that around the beam, that will hold it." This employee of plaintiff hooked that onto the I beam. Gooch did not go up to look at the I beam. Then Gooch started again hoisting the switchboard, and when it had reached almost even with the second floor, the cable broke or was cut, and the switchboard fell to the ground, and was badly damaged. Gooch then left.

Gooch told plaintiff's employees how and where to connect the cables.

Defendant offered evidence tending to show: Mr. Vaughan asked him to send a truck to his job to assist in putting this switchboard on the second floor. He asked Vaughan if he needed additional labor. Vaughan replied his men were available. Normally, this job would require 6 to 7 men. He rents all his equipment out on an hourly basis and with the operators. All the work he has done for plaintiff has been on an hourly basis. After the switchboard had fallen, he went to the scene. He saw the steel mesh cable lying on the ground in two places. He was positive it was cut, it was all sheared at one point. He did not go up to the second floor, and examine the I beam.

Gooch testified that when he was told the beam was bending, he stopped. He did not go up and inspect the beam. The large steel mesh cable was new, and had a lifting capacity of 21,000 pounds. Gooch testified: "I had not inspected the edges of the flanges on the I beam to determine if they were sharp or not. I hadn't been off the ground. This could have a definite effect, however, on whether or not the cable might be cut. When the flange was bent, I did not inspect the I beam to determine if there were any sharp edges caused by that. I didn't ever leave the ground. I was just the operator."

The issues submitted by the court to the jury are set forth above. Plaintiff tendered to the court two issues: one, of negligence, and the other of damages, which the court declined to submit. To this ruling plaintiff did not except in apt time.

Defendant contends plaintiff bottomed its case on bailment, and it must rise or fall on this issue. This argument is not tenable. Plaintiff bottomed its case on negligence in large part, if not entirely, and contends in its brief that the court erred in submitting an issue of bailment.

The law of bailment is not applicable to the facts disclosed in this case by plaintiff's evidence, as well as by defendant's evidence. This

Court said in *Wells v. West,* 212 N.C. 656, 194 S.E. 313: "The generally accepted definition of a bailment is that it is 'a delivery of goods in trust upon a contract, express or implied, that the trust shall be duly executed and the goods restored by the bailee as soon as the purposes of the bailment shall be answered.' 2 Kent Comm., 559. To constitute a bailment there must be a delivery by the bailor and acceptance by the bailee of the subject matter of the bailment. It must be placed in the bailee's possession, actual or constructive. 6 Am. Juris., 191. 'There must be such a full transfer, actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and give the bailee for the time being the sole custody and control thereof.' 6 Am. Juris., 192." See, 6 Revised Am. Jur., Bailments, Section 65; 8 C.J.S., Bailments, page 249.

Actionable negligence is based upon the breach of a duty on the part of one person to exercise due care to protect another against injury, by failing to perform, or in the manner of performing, such duty, as a proximate result of which the latter sustains an injury. Due care being the care an ordinarily prudent man would exercise under similar circumstances, and when charged with a like duty. *Griffin v. Blankenship,* 248 N.C. 81, 102 S.E. 2d 451; *Barnes v. Caulbourne,* 240 N.C. 721, 83 S.E. 2d 898. It is well settled in North Carolina that foreseeability is a requisite of proximate cause. *Davis v. Light Co.,* 238 N.C. 106, 76 S.E. 2d 378; *Aldridge v. Hasty,* 240 N.C. 353, 82 S.E. 2d 331.

Plaintiff's evidence tends to show that defendant did not exercise due care in hoisting the switchboard, according to his contract, in that he did not have enough employees there to do the work properly, in that the I beam, on which the cables of the crane truck were fastened, was not examined by defendant at the beginning to see if it had any sharp edges which might cut the cable or cables in hoisting, and in that after the I beam began bending, and was beginning to twist a little from the strain being put on it, and a popping sound was heard, and Gooch was told the beam was bending, he, defendant's employee, did not examine the I beam to see if sharp edges had been created by such bending and popping, but caused a cable to be wrapped around it, and began hoisting again, and that in doing so the cable was cut, (this is defendant's testimony), permitting the reasonable inference that the I beam had sharp edges upon it before the hoisting began, or that such sharp edges were caused by the strain of hoisting before the last cable was wrapped around it, and that such negligence proximately caused the switchboard to fall, and that any person of ordinary prudence could have reasonably foreseen that such a result, or some injurious result, was probable under the facts as they existed.

Plaintiff's evidence, including defendant's evidence favorable to it, was sufficient to carry the case to the jury on the theory of negligence.

The issue of bailment was improperly submitted. Even so, when the jury answered that issue No, that did not end the case, but the jury should have been instructed to consider and answer the second issue.

Plaintiff assigns as errors the following parts of the charge in parentheses: One, "Now, if you answer the first issue YES, you will then consider the second issue. (But, if you answer that issue NO, you need not consider any of the other issues)." Two, later on the court charged, "(Now, if you answer the first issue NO, and the second issue NO, that ends the case. Or, if you answer the first issue NO, and the second issue YES, then you will consider the third issue)." Three, later on the court charged, "(Now, if you answer that Issue #1, NO, and #2 NO, as I say, that ends the case. If you answer that Issue #1, YES, and #2, YES, you will then consider this third issue and answer it)."

In the face of these conflicting instructions, the jury may have acted, and probably did, upon the part of the charge which instructed them if they answered the first issue No, they need not consider any of the other issues. What was said later did not cure this patent error. The exceptions to the charge are well taken, and entitle plaintiff to a new trial. S. v. Stroupe, 238 N.C. 34, 76 S.E. 2d 313. Further, the issues do not support the judgment.

New Trial.