ALEXANDER P. SABOL AND PEGGY W. SABOL v. PARRISH REALTY OF ZEBULON, INC., A NORTH CAROLINA CORPORATION, AND RALPH McCOIG, JR.

No. 859SC107

(Filed 19 November 1985)

**Brokers and Factors § 4.1— real estate agency—damage to vacant house—insufficient evidence of agency's negligence**

In an action for negligence and breach of contract arising from water damage to a vacant house listed with a real estate agency, the issue of the agency's negligence should not have been submitted to the jury where the evidence showed that when plaintiffs left their house on 9 August 1982 a bleed valve on the second floor was closed, the well pump and all of the circuit breakers were off, and the doors of the house were locked; plaintiff husband entered the house on 18 August and the house appeared all right; plaintiff husband did not open the bleed valve, turn on the pump or any circuit breakers, and locked the door when he left; the only key to the house not in plaintiffs' possession was in the possession of defendant; there was no evidence of forceful entry or vandalism; several of defendant's agents admitted they were in the house with other agents, a prospective purchaser, or guests; the water damage to the house could not have occurred unless someone entered the house, used the water, opened the bleed valve, turned on the breaker switch for the pump, entered the well house, and manually activated the safety switch on the pump; and one of the exterior panels in the well house was sufficiently loose for someone to crawl in without unlocking the door. There was no direct evidence showing that any agent of defendant did any of the acts necessary to cause the damage to plaintiffs' house; the activation of the switch in the well house could have been done by someone other than an agent of defendant; and there was no evidence that any agent of defendant failed to exercise proper care.

Judge PHILLIPS dissenting.

APPEAL by defendant Parrish Realty of Zebulon, Inc., from *Hobgood, Judge.* Judgment entered 1 August 1984 in FRANKLIN County Superior Court. Heard in the Court of Appeals 17 September 1985.

Plaintiffs instituted this civil action seeking to recover, among other relief, damages arising from the alleged negligence of defendants. Plaintiffs also set forth in their complaint claims for relief based on breach of contract and unfair and deceptive practices.

The record tends to show the following facts: Plaintiff husband is a retired aeronautical research scientist and has degrees

in both aeronautical engineering and mechanical engineering. Between 1976 and 1980, he designed and, with the assistance of his wife, built a house on property owned by them in Franklin County. On 23 July 1982, plaintiffs granted the defendant realty company (Parrish Realty) the exclusive right to sell their property for the next 120 days. At that time plaintiff husband gave a key to the house to defendant McCoig, a real estate broker employed by Parrish Realty, and kept the remaining keys to the house. Parrish Realty placed a lock box on the door of plaintiffs' house and listed the property with the Multiple Listing Service. Parrish Realty admitted prior to trial, however, that no members of the Multiple Listing Service other than Parrish's employees entered plaintiffs' property during the relevant time period. On the evening of 20 August 1982, it was discovered that plaintiffs' house had been badly damaged by water escaping from a bleed valve located on its second floor.

Plaintiff husband testified as follows about the house's water system: To protect the pipes during cold weather, he designed the water system so that it could be completely drained. To facilitate draining the pipes, he installed a bleed valve on the second floor of the house at the highest point in the water system. This valve remained closed during normal operation of the system. As an additional safety measure, a pressure switch on the pump inside the well house turned off the pump when the pressure in the holding tank fell below ten pounds per square inch, thereby guarding against flooding of the house in the event a pipe broke. Once the electricity to the pump was cut off and the pressure in the tank fell below ten pounds per square inch, the pump would not restart without manually activating the safety switch. The well house was locked; however, one of its exterior panels was sufficiently loose for someone to crawl in without unlocking the door.

Plaintiff husband testified that someone must have done the following five things in sequence in order to cause the flooding which occurred in his house on 20 August 1982: (1) entered the house, (2) used the water in the house so that the pressure in the holding tank dropped below ten pounds per square inch, (3) opened the bleed valve, (4) turned on the breaker switch in the house for the well pump, and (5) entered the well house and manually activated the safety switch on the pump. Plaintiff husband last operated the water system on 9 August 1982 when he

and his wife cleaned the house. He testified that the bleed valve was closed on that date and that before he left the property that day he turned off the well pump and checked to make sure that all the circuit breakers were off. He was also in the house on 18 August 1982 at which time he checked to see that everything was all right. He did not turn on the water or touch the electrical system while he was there and locked the door when he left. He came on the property again on 20 August 1982 between 2 and 3 p.m. and parked his truck between the residence and the well house. He turned off the motor of the truck and did not hear the well pump running. He left without getting out of his truck.

After plaintiffs listed their property with Parrish Realty, the brokers employed by Parrish Realty visited the property for a short staff meeting. One of the brokers testified that during the staff meeting he did not see anyone use the water or toilet in the house or turn the bleed valve, and that no one opened the electrical panel box. Another broker, William Parrish, testified that he was on the property shortly after it was listed and that he did not at that time turn on any lights or use any water or the toilet. He further stated that he did not go in the well house when he was at the staff tour.

Marty Clark, a broker with Parrish Realty, testified to showing the property to a client on 18 August 1982, at which time they turned on no water, valves or electrical breakers and did not enter the well house.

William Green, another broker employed by Parrish Realty, testified that he showed plaintiffs' property to a client and three of the client's relatives on the afternoon of 18 August 1982, that they went in the house and stayed for 30-40 minutes, and that he locked the door when they left. He said that during the visit no one opened the panel box or the bleed valve, flipped any switches or went in the well house. Green returned to the property with the client the morning of 20 August but neither he nor the client entered the residence or the well house.

Defendant McCoig testified that he and a client, Raymond Beck, went in the residence on the evening of 19 August 1982 to take some measurements. Since it was dark, he and Beck went to the second floor of the house, located the panel box with the breaker switches and, with the aid of a flashlight, found the light

Sabol v. Parrish Realty of Zebulon, Inc.

switch and turned it on. After they finished in the house, they turned off the light switch and locked both doors of the house. McCoig testified that only he, not Beck, touched the panel box and the switches and that he was with Beck at all times during the visit. He said that when they left the property all the switches in the panel box were in the off position. He further stated that during the visit neither he nor Beck went in the well house, drank any water, used the toilet, drank beer as alleged by plaintiffs or turned on any switches other than the light switch. McCoig testified that plaintiff husband had previously explained to him the purpose of the bleed valve, that he never touched the bleed valve during any of his visits to the property and that he never turned on the switch to the well house. Beck testified consistently with McCoig regarding what he and McCoig did on plaintiffs' property on 19 August 1982.

On the afternoon of 20 August 1982, Beck called McCoig and asked if he could inspect the grounds of plaintiffs' property since it had been dark the previous night. McCoig testified that he did not give Beck a key to the house nor did Beck ask for permission to go inside the house. Beck testified that he returned to plaintiffs' property about 7 p.m. on 20 August 1982 while it was still light and began an inspection of the grounds. He noticed that part of the foundation of the house looked damp so he approached the house to investigate. He discovered that the house had been badly damaged by water flooding out of a hole on its second floor. He then left the property and informed McCoig of the damage.

Defendants moved at trial for directed verdicts on all claims asserted by plaintiffs. The court granted the motion with respect to plaintiffs' unfair and deceptive practices claim but denied it with respect to plaintiffs' breach of contract and negligence claims. The jury returned a verdict finding that plaintiffs' property was damaged by the negligence of Parrish Realty, but not by any negligence on the part of McCoig, and that plaintiffs were entitled to recover $5000 from Parrish Realty for such negligence. The jury further found in favor of plaintiffs on their breach of contract claim and awarded them nominal damages. Parrish Realty moved for judgment notwithstanding the verdict and for a new trial. The court denied the motions and entered judgment in accordance with the verdict. Parrish Realty appealed.

*Larry E. Norman for plaintiffs.*

*Smith, Debnam, Hibbert & Pahl, by W. Thurston Debnam, Jr. and Jerry Talmadge Myers, for defendant Parrish Realty of Zebulon, Inc.*

WELLS, Judge.

Parrish Realty argues that the court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict on the issue of its negligence because plaintiffs failed to prove that Parrish Realty or any of its agents committed the acts which were the proximate cause of plaintiffs' damages. In ruling on a defendant's motions for a directed verdict and judgment notwithstanding the verdict, the court must take the evidence in favor of the plaintiff as true, resolve any conflicts in the evidence in the plaintiff's favor and give the plaintiff the benefit of every inference which may be reasonably drawn from the evidence. *See Summey v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973). It is only when the evidence is insufficient to support a verdict in the non-movant's favor that the motions should be granted. *Northern Nat'l Life Ins. v. Miller Machine Co.,* 311 N.C. 62, 316 S.E. 2d 256 (1984).

So viewed, the evidence here shows the following: When plaintiffs left their house on 9 August 1982, the bleed valve on the second floor was closed, the well pump and all of the circuit breakers were off and the doors of the house were locked. Plaintiff husband entered the house again on 18 August 1982 but he did not open the bleed valve, turn on the pump or any circuit breakers and locked the door when he left. At that time, everything in the house appeared all right. The damage to plaintiffs' house could not have occurred unless a person or persons entered the house, used the water, opened the bleed valve, turned on the breaker switch for the pump and then went into the well house and manually activated the safety switch on the pump. The last step in the above sequence apparently was done after 2-3 p.m. on 20 August 1982. The only key to the house not in plaintiffs' possession was in the possession of defendant. No evidence was presented which showed that the house had been forcefully entered or vandalized. Several of Parrish Realty's agents admitted that they were in the house after the property was listed,

and prior to when the damage occurred, either with other agents, a prospective purchaser or guests. Such evidence clearly tends to show that the person or persons who used the water in the house opened the bleed valve and turned on the breaker switch for the pump, gained entry to the house with the key given to Parrish Realty, and was either an agent of Parrish Realty or a prospective purchaser or guest allowed into the house by Parrish Realty but that since the well house could be entered by way of a loose exterior panel, anyone discovering the loose panel could have activated the safety switch on the pump inside.

The question for our determination is whether such evidence is sufficient to take the issue of Parrish Realty's negligence to the jury. We begin by reviewing general principles of negligence. "Negligence is not presumed from the mere fact of injury." *Jackson v. Gin Co.*, 255 N.C. 194, 120 S.E. 2d 540 (1961). To establish actionable negligence, the plaintiff must show that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed to the plaintiff under the circumstances in which they were placed, and that such breach of duty was a proximate cause of the plaintiff's injury. *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 311 S.E. 2d 559 (1984); *Jackson v. Gin Co., supra.* Proper or due care is that care which a reasonably prudent person would exercise under similar circumstances when charged with a like duty. *Electric Co. v. Dennis*, 255 N.C. 64, 120 S.E. 2d 533 (1961); *Bogle v. Power Co.*, 27 N.C. App. 318, 219 S.E. 2d 308 (1975), *disc. rev. denied*, 289 N.C. 296, 222 S.E. 2d 695 (1976).

Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed. [Citations omitted.]

*Hairston v. Alexander Tank, supra.* Proximate cause is an inference of fact to be drawn from other facts and circumstances. *Id.*

Circumstantial evidence may be used to establish actionable negligence. *Greene v. Nichols*, 274 N.C. 18, 161 S.E. 2d 521 (1968). When the plaintiff relies on such evidence, the issue is one for jury determination only where there is evidence of facts and circumstances from which it may be inferred that the more reasonable probability is that the defendant is guilty of actionable negligence. *Id.* An inference of negligence or of proximate cause, however, cannot rest on mere conjecture or surmise. *Monk v. Flanagan*, 263 N.C. 797, 140 S.E. 2d 414 (1965). "This is necessarily so because an inference is a permissible conclusion drawn by reason from a premise established by proof." *Id.* If plaintiff does not offer evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, the issue should not be submitted to the jury. *Jackson v. Gin Co., supra.*

Plaintiff must not only show that the damage *might* have been caused because of the defendant's negligence, but must show by reasonable affirmative evidence that it *did* so originate. *See Phelps v. Winston-Salem*, 272 N.C. 24, 157 S.E. 2d 719 (1967). If all that can be said is that the defendant *may* have done the acts which caused the injury, and it is equally true that defendant may not have, then the evidence is merely conjectural and is not sufficient to go to the jury. *Id.* Similarly, when the facts of the occurrence merely indicate negligence on the part of some person and do not point to the defendant as the only *probable* tortfeasor, the action must be dismissed unless additional evidence is introduced which eliminates negligence on the part of all others who could have caused the injury. *Kekelis v. Machine Works*, 273 N.C. 439, 160 S.E. 2d 320 (1968).

Applying these principles to the present case, we conclude that the evidence, even when viewed in the light most favorable to plaintiffs, is insufficient to support a verdict for plaintiffs on the issue of Parrish Realty's negligence. No direct evidence was presented which shows that any agent of Parrish Realty did any of the acts necessary to cause the damage to plaintiffs' house. Though the circumstantial evidence shows that some of the acts which caused the damage *may* have been done by one or more agents of Parrish Realty or by one or more of the prospective purchasers or guests of Parrish Realty, either purposefully or unwittingly, the final step in the sequence of events resulting in the damage, the activation of the safety switch in the well house,

could have been done by someone other than an agent of Parrish Realty. Thus, the evidence regarding who did the act which caused the damage is conjectural. *See Phelps v. Winston-Salem, supra.*

Moreover, no evidence was presented which shows that any agent of Parrish Realty failed to exercise proper care in showing plaintiffs' property to prospective purchasers or guests or failed to exercise reasonable control over such persons; therefore, the evidence does not support a finding that Parrish Realty was negligent based on the actions of the prospective purchasers or guests. To uphold the judgment against Parrish Realty based on the actions of the prospective purchasers or guests, in the absence of any evidence tending to show that an agent of Parrish Realty failed to exercise proper care in some respect in showing the property to such person or persons, would be tantamount to imposing strict liability on Parrish Realty for the actions of the persons to whom it showed the property. We find nothing in the law or in the contract between the parties which justifies such a result.

It is important to note that the jury found that the damage was not caused by negligence on the part of agent McCoig; therefore, the judgment may only be upheld if the evidence shows that the damage was caused by negligence on the part of some other agent of Parrish Realty. We conclude that no evidence was presented which tends to show beyond mere conjecture or surmise that any agent of Parrish Realty was negligent. Thus, the issue of Parrish Realty's negligence should not have been submitted to the jury and that part of the judgment entered finding in favor of plaintiffs on that issue must be reversed. The remainder of the judgment awarding plaintiffs nominal damages on their breach of contract claim is affirmed.

Reversed in part; affirmed in part.

Judge WHICHARD concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

In my opinion the evidence presented at trial was sufficient to support the verdict and I vote to uphold the judgment entered on it. Accepting plaintiffs' evidence as true and viewing it in the light most favorable to them it tends to show, in my judgment, that one of defendant's agents was negligent and plaintiffs' house was proximately damaged thereby. In effect, the defendant corporation was the custodian of plaintiffs' house for the purpose of showing it to prospective purchasers; as such its agents had the duty to use due care to avoid damaging the house, either by their own conduct or by that of those who they took into the house. One who activates devices in a strange house, such as a bleed valve and breaker switch, or permits others to do so without knowing what such action might entail and without putting things back as they were, is clearly negligent; and the evidence tends to show, as the majority concedes, that these devices were activated while one of defendant's agents was showing the house to a prospective purchaser. That the bleed valve and breaker switch were both opened while the house was in defendant's custody is proof enough, in my view, that the agent involved either did it, knew about it, or should have known about it, and thus was negligent. To so hold is not tantamount to imposing strict liability duties on the defendant; it is but holding defendant accountable for what it knew or should have known in accord with basic principles of the law of negligence. Since who opened the devices should be known to defendant, but cannot be known by plaintiffs, instead of defendant's professed ignorance and plaintiffs' inability to prove just who opened them being a basis for dismissing the case, it is proof positive, I think, that defendant's agent was either inattentive or untruthful. For nothing in the evidence warrants the assumption that the agent in charge of the house did not or should not have seen that the two devices were activated, as both were located where their use was not likely to be missed by a reasonably observant agent. The bleed valve was in an "access hole" in the hall, about waist high above the water heater, and the breaker switch was in a switch box, also on the second floor.

The old bromide about negligence not being presumed from the "mere fact of injury" has no application, as it so seldom does. The jury did not presume defendant corporation was negligent just because the injury occurred; it presumed it was negligent

Schaffner v. Cumberland County Hosp. System

because of the meddlesome and thoughtless things that were done either by its agent or in his presence. That someone else may have entered the well house and took the last step necessary to cause the house to be flooded is immaterial; if the negligent acts in the house had not been committed, the house would not have been damaged.