CLYDE P. MURPHEY v. GEORGIA PACIFIC CORPORATION

No. 189A90

(Filed 25 June 1992)

**1. Negligence § 9 (NCI3d) — rewiring electric meter — ground fault interrupter disconnected — summary judgment for defendant — improper**

The trial court erred by granting summary judgment for defendant in a negligence action brought by a plaintiff injured when an electric meter exploded while plaintiff was rewiring the meter, and defendant had previously disconnected a ground fault interrupter (GFI) which would have extinguished the arc and prevented injury to plaintiff. There was evidence that the National Electric Code requires an operational GFI for the type of switchgear to which the meter was connected, and a violation of the National Electric Code is negligence *per se*. There was also testimony from which a jury could find that, in disabling the protective equipment, defendant did something a reasonable man in similar circumstances would not do, and the jury could find that operating the switchgear after the GFI had been disconnected was negligence in that it created a hidden defect which was known by defendant and not known by plaintiff. While it is true that the disconnected GFI did not cause the explosion, the complaint is that the GFI did not shut down the power when the fault occurred, and the burden will be on the plaintiff to show how much of the injury was caused by the negligence of the defendant.

**Am Jur 2d, Negligence §§ 716 et seq.**

MURPHEY v. GEORGIA PACIFIC CORPORATION

[331 N.C. 702 (1992)]

2. **Negligence § 13.1 (NCI3d) — rewiring electric meter — explosion — contributory negligence**

Summary judgment was incorrectly granted for defendant in an action brought by a plaintiff injured when the electric meter which he was rewiring exploded and defendant had claimed that contributory negligence barred recovery. The evidence does not show why plaintiff did not see that a ground fault interrupter (GFI) was disconnected and it could not be held as a matter of law that plaintiff should have seen the disconnection, and affidavits made it a jury issue as to whether it was contributory negligence for plaintiff to work in the cabinet without shutting down the power.

**Am Jur 2d, Negligence §§ 842 et seq.**

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL as of right by plaintiff pursuant to N.C.G.S. § 7A-30(2) from a divided panel of the Court of Appeals, 98 N.C. App. 55, 389 S.E.2d 826 (1990), affirming a judgment entered by *Johnson (E. Lynn), J.*, on 10 November 1988 in Superior Court, COLUMBUS County. Heard in the Supreme Court 13 November 1990.

The plaintiff brought this action to recover for personal injuries he received while performing work as an electrician for the defendant. The defendant made a motion for summary judgment. The papers filed in support and in opposition to the motion showed that in the summer of 1981 the plaintiff was employed as a general job superintendent with Ireland Electric Company. Ireland Electric had installed an electric meter at a sawmill the defendant owned and operated near Whiteville, North Carolina.

The meter did not work properly. Ralph Ireland, the owner of Ireland, and the plaintiff went to the premises of the defendant on 8 August 1981 to rewire the meter. The meter was attached to the outside of a cabinet which contained electrical equipment known as a switchgear. There was a ground fault interrupter (GFI) as a part of the switchgear. The GFI is a piece of equipment that senses when there is an abnormal amount of power going from phase to ground and signals a circuit breaker to shut down the power. The GFI does not prevent a fault from occurring. When a fault occurs, the GFI will shut down the power. At some point

in 1977 or 1978, because of unexplained tripping in one of the defendant's wood processing facilities, the defendant disconnected the GFI.

When Mr. Ireland and the plaintiff entered the premises of the defendant, they were not told that the GFI had been disconnected. Mr. Ireland and the plaintiff opened the cabinet. The plaintiff said he saw the GFI but did not see that it had been disconnected. Mr. Ireland said that he saw the GFI had been disconnected but he did not tell the plaintiff. The plaintiff entered the cabinet and began rewiring the meter. There was an explosion which caused a flame which severely burned the plaintiff. The explosion was caused by a fault in a conductor which caused an arc. There was no evidence as to what caused the fault.

Edward W. McNally, an electrical engineer, testified by affidavit that had the GFI been operable it would have extinguished the arc and prevented injury to the plaintiff. An affidavit by James Samuel McKnight, an electrical engineer, was filed in which he said that if the GFI had been operable, it would have significantly decreased the magnitude of the fire by reducing approximately 95% or more of the electrical power which fed the fire. In such a case, said Mr. McKnight, it is highly unlikely that the plaintiff would have received the serious injuries which he received.

The superior court granted the defendant's motion for summary judgment. The Court of Appeals affirmed. The plaintiff appealed to this Court.

*DeBank, McDaniel, Holbrook & Anderson, by William E. Anderson, for plaintiff appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Ronald C. Dilthey, for defendant appellee.*

WEBB, Justice.

This case brings to the Court a question as to the propriety of allowing a motion for summary judgment in an action for personal injury based on negligence. When a defendant moves for summary judgment in such a case and supports the motion with a forecast of evidence that would entitle him to a directed verdict if the evidence were offered at trial, the defendant is entitled to have his motion allowed unless the plaintiff makes a forecast of evidence which shows there is a genuine issue for trial. *Moore*

*v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E.2d 419 (1979); *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). The question posed by this case is whether the evidence forecast by the papers filed by both parties shows as a matter of law that the defendant's negligence was not the proximate cause of the plaintiff's injury or that the plaintiff's contributory negligence was the proximate cause of the injury.

[1] The parties agree that the disconnected GFI did not cause the explosion. The explosion would have occurred even if the GFI had been connected. The plaintiff contends that if the GFI had been operational, it would have prevented the fire from spreading and, at the least, he would not have been burned as severely as he was burned. He contends that a reasonable man would not have disconnected the GFI and if he had done so, he would have warned the plaintiff of this hidden defect.

The first question we face is whether the papers filed show that the defendant was negligent in operating the switchgear after the GFI had been disconnected. Mr. McKnight said in his deposition that the National Electric Code requires that a GFI be operational for the type switchgear used in this case. We held in *Jenkins v. Electric Co.*, 254 N.C. 553, 119 S.E.2d 767 (1961), that a violation of the National Electric Code is negligence *per se*.

In addition to the evidence of the violation of the National Electric Code, there was other evidence of negligence contained in the affidavits of Mr. McNally and Mr. McKnight. Mr. McNally said,

> [S]afe and sound standard electrical system management practices require that the GFI be operational. Safe, prudent engineering practices would have indicated that the circuit be checked out for a fault condition and repaired, rather than having this protective device disabled. In my opinion this was a willful act without regard for the life and safety of persons who might be affected thereby.

Mr. McKnight said in his affidavit,

> A reasonable and prudent man in the same or similar circumstances would have undertaken a thorough shake-down of the system by his employees or an independent contractor such as Ireland Electric Company rather than simply disabling the protective equipment. A reasonable and prudent person in the same or similar circumstances would not have continued

to operate this particular equipment with the protective device disabled for a period of three years until the accident.

A jury could find from this testimony that the defendant did something a reasonable man in similar circumstances would not do and was negligent. *See Sparks v. Phipps*, 255 N.C. 657, 122 S.E.2d 496 (1961); *Electric Co. v. Dennis*, 255 N.C. 64, 120 S.E.2d 533 (1961).

This Court, in applying negligence principles to a case in which an independent contractor was performing work on the premises of an owner of property, held in *Deaton v. Elon College*, 226 N.C. 433, 38 S.E.2d 561 (1946), that the owner is under the same duty to the contractor as he is to third persons generally. If there is a hidden defect on the premises which is known to the owner and the contractor does not know and he ought not to know of the defect, the owner is under a duty to notify the contractor of the defect.

In this case, the jury could find that operating the switchgear after the GFI had been disconnected was negligence. It created a hidden defect which was known by the defendant and was not known by the plaintiff. The defendant violated its duty to the plaintiff by not notifying him of the defect.

We also hold that a jury could find that the negligence of the defendant was a proximate cause of the injury to the plaintiff. Proximate cause is a cause which in natural and continuous sequence produces a plaintiff's injuries and one from which a person of ordinary prudence could have reasonably foreseen that such a result or some similar injurious result was probable. *Kanoy v. Hinshaw*, 273 N.C. 418, 160 S.E.2d 296 (1968). We believe the jury could find that the National Electric Code would not require the use of a GFI if it were not reasonably foreseeable it was dangerous not to use it. By the same token, Mr. McNally and Mr. McKnight would not have testified that it was not a good practice to operate the switchgear without the GFI being operational unless they believed there was danger of injury if the GFI was not operational. This is evidence from which a jury could find proximate cause.

The defendant argues that the failure to have the GFI in operation was not the proximate cause of the injury to the plaintiff because this failure did not cause the explosion. It is true that the disconnected GFI did not cause the explosion. The complaint

MURPHEY v. GEORGIA PACIFIC CORPORATION

[331 N.C. 702 (1992)]

of the plaintiff is that when the fault occurred the GFI did not shut down the power. If the evidence is as forecast at the summary judgment hearing, there will not be an issue submitted as to negligence in causing the explosion. There will be an issue submitted as to whether the negligence of the defendant caused or enhanced the injury to plaintiff when the explosion occurred. The burden of proof will be on the plaintiff to show how much of the injury was caused by the negligence of the defendant. The jury should be able, from the evidence, to make this determination.

This case is not like *Warren v. Colombo*, 93 N.C. App. 92, 377 S.E.2d 249 (1989), a case in which Judge Orr said the Court of Appeals would for the first time recognize a claim for enhanced damages. In that case, there were several defendants. The allegations of the complaint showed that one of the defendants, the manufacturer of a school bus, did not do anything that caused the accident, but it had manufactured the bus in such a way that the injuries to the passengers were enhanced. In that case, there was a problem of apportioning damages among several defendants. In this case, the only injury to the plaintiff, as shown by the forecast of evidence, was caused by the defendant. The problem of apportioning damages among two or more defendants does not arise, although the defendant may not be liable for all the plaintiff's injuries. This eliminates several problems which might arise in an action for enhanced injuries. *See* Kerry A. Shad, *Warren v. Colombo: North Carolina Recognizes Claim for Enhanced Injury*, 68 N.C. L. Rev. 1330 (1990).

[2] The defendant contends the papers filed show as a matter of law that the contributory negligence of the plaintiff bars his recovery. The defendant first says that the depositions and affidavits of several witnesses show that they saw that the GFI had been disconnected when they looked into the cabinet shortly before the explosion. The defendant argues that all the evidence shows the plaintiff should have seen the disconnection when he inspected the workplace and he was negligent in not doing so. Whether the plaintiff should have seen that the GFI was disconnected is a question for the jury. The evidence does not show why the plaintiff did not see that the GFI was disconnected and we cannot hold as a matter of law that the plaintiff should have seen the disconnection. *See Diamond v. Service Stores*, 211 N.C. 632, 191 S.E. 358 (1937), in which this Court held that it was a jury question as to whether a welder who was injured in an ex-

MURPHEY v. GEORGIA PACIFIC CORPORATION

[331 N.C. 702 (1992)]

plosion should have seen the can of flammable liquid which exploded.

The defendant also contends the plaintiff was contributorily negligent for working in the cabinet without cutting off the power to the switchgear. In his affidavit, Mr. McNally said:

> It is not a violation of any established safety rule or practice, and was not in August, 1981, to perform the procedure which Mr. Murphey was performing and [sic] the location where he was performing it. The procedure being followed was neither an unsafe procedure nor at an unsafe location, so long as the electrician maintains adequate clearance which he did, and is careful not to come into contact with energized equipment, which he did not.

James McKnight said in his affidavit:

> It is not, and was not in 1981, a violation of any safety code to stand in that location, or to work on either the low-voltage potential transformers or the non-energized (neutral) buss while the switch gear as a whole is energized. A reasonable and prudent person under the same or similar circumstances would do so, and have done so, provided he had adequate clearance, adequate distance from the hot area, and avoided harmful contact with a hot component.

The affidavits of Mr. McNally and Mr. McKnight make it a jury issue as to whether it was contributory negligence for the plaintiff to work in the cabinet without shutting down the power.

For the reasons stated in this opinion, we reverse and remand to the Court of Appeals for remand to the Superior Court, Columbus County, for proceedings consistent with this opinion.

Reversed and remanded.

Justice LAKE did not participate in the consideration or decision of this case.