701 S.E.2d 700 (2010)
Lynda SPRINGS, Plaintiff,
v.
CITY OF CHARLOTTE, Transit Management of Charlotte, Inc., and Dennis Wayne Napier, Defendants.
No. COA09-839.
Court of Appeals of North Carolina.
November 16, 2010.
*702 The Odom Firm, PLLC, Charlotte, by T. LaFontine Odom, Sr., Thomas L. Odom, Jr., and David W. Murray, for plaintiff-appellee.
Robert D. McDonnell, Charlotte, for defendants-appellants Transit Management of Charlotte, Inc. and the City of Charlotte; and Frank B. Aycock, II, Charlotte, for defendant-appellant Dennis Wayne Napier.
GEER, Judge.
Defendants City of Charlotte ("the City"), Transit Management of Charlotte ("TMOC"), and Dennis Wayne Napier appeal from a judgment entered in a negligence action brought by plaintiff Lynda Springs following a motor vehicle accident. We uphold the trial court's denial of the motion for a directed verdict and judgment notwithstanding the verdict ("JNOV") on the issue of permanent injuries, but we agree with defendants that the trial court erred in not providing a written opinion setting out its reasons for denying the JNOV motion with respect to the award of punitive damages as required by N.C. Gen.Stat. § 1D-50 (2009) and Hudgins v. Wagoner, ___ N.C.App. ___, ___, 694 S.E.2d 436, 447-48 (2010). We also hold that the trial court did not fully comply with the statutes governing awards of costs, and, therefore, on remand, the court must reconsider its costs decision in addition to providing a written opinion setting out its reasons for upholding the punitive damages award.

Facts
TMOC is a company that employs and manages bus drivers for the City. On 16 June 2004, Mr. Napier, an employee of TMOC, was operating a City bus within the course and scope of his employment when the bus rear-ended a van stopped at a red light at an intersection. Earl Springs, the driver of the rear-ended van, had been driving his wife, Mrs. Springs, home from a medical appointment. Mrs. Springs cannot walk and is wheelchair-bound due to Multiple Sclerosis ("MS"). Mrs. Springs was secured in her wheelchair beside her husband in the van.
Several seconds after Mr. and Mrs. Springs stopped at the intersection, the bus driven by Mr. Napier slammed into the back of the van at a rate of speed somewhere between 25 and 45 miles per hour. After the impact, the van traveled about 342 feet, with the bus leaving 70 feet of skid marks and traveling 25 feet after impact.
The impact broke the back of Mrs. Springs' wheelchair, causing her to be catapulted into the back of the van, striking multiple parts of her body. Mrs. Springs was transported to Presbyterian Hospital, where she was examined by Dr. John Clark. Dr. Clark observed multiple lacerations caused by flying glass. He diagnosed Mrs. Springs with an acute cervical strain, a sprained dorsal spine, and contusions to the right shoulder and elbow.
Five months later, in November 2004, Mrs. Springs was diagnosed with avascular necrosis in her right shouldera lack of blood supply to the bone resulting in a dying of the bone. She continues to have right shoulder and bilateral shoulder pain and limited range of motion. Prior to the collision, she was able to transfer herself to and from her wheelchair, cook, clean, assist in her bathing, change her catheter, and drive a motor vehicle unassisted. Since the collision, she has not been able to do these tasks because of the injuries and pain in her shoulders.
On 14 June 2007, Mrs. Springs filed suit against defendants, alleging negligence by defendants and negligent entrustment, hiring, and retention by TMOC and the City. At trial, defendants stipulated that Mr. Napier was negligent, that he collided with the Springs van, and that the collision caused injuries to Mrs. Springs. Defendants disputed, however, that any permanent conditions suffered by Mrs. Springs were caused by the accident. On 8 August 2008, the jury returned a verdict for Mrs. Springs against all defendants, awarding her $800,000.00 in compensatory damages. The jury also found that Mrs. Springs was injured by TMOC's willful or wanton conduct and was entitled to recover $250,000.00 from TMOC in punitive damages.
The trial court entered judgment on the verdict on 15 August 2008. On 21 August 2008, defendants filed a motion for JNOV *703 and a motion for a new trial. Mrs. Springs filed a motion to tax costs against defendants on 21 August 2008 and an amended motion to tax costs on 25 August 2008. On 6 November 2008, the trial court entered an order granting Mrs. Springs costs in the amount of $58,034.17. The trial court also entered an order denying defendants' motions for JNOV and for a new trial. Defendants timely appealed to this Court.

I
Defendants first argue that the court erred in sending the issue of permanent injuries to the jury because Mrs. Springs failed to present sufficient evidence of causation of her injuries.[1] This Court has explained:
With respect to the evidence sufficient to warrant an instruction as to permanency, our Supreme Court has made the following remarks:
To warrant an instruction permitting an award for permanent injuries, the evidence must show the permanency of the injury and that it proximately resulted from the wrongful act with reasonable certainty. While absolute certainty of the permanency of the injury and that it proximately resulted from the wrongful act need not be shown to support an instruction thereon, no such instruction should be given where the evidence respecting permanency and that it proximately resulted from the wrongful act is purely speculative or conjectural.

Short v. Chapman, 261 N.C. 674, 682, 136 S.E.2d 40, 46-47 (1964). Thus, a permanency instruction is proper if there is sufficient evidence both as to (1) proximate cause and (2) the permanent nature of any injuries.
Matthews v. Food Lion, Inc., 135 N.C.App. 784, 785, 522 S.E.2d 587, 588 (1999).
In this case, the issue is the sufficiency of Mrs. Springs' evidence of proximate causation of her injuries. Defendants argue that the evidence presented by Mrs. Springs regarding causation through Dr. David Kingery, a board-certified expert in orthopedics and one of Mrs. Springs' treating physicians, was merely "speculative." They contend that their expert evidence showed that the real causes of Mrs. Springs' shoulder condition were preexisting, progressive problems and that she would have been in the same condition even if the accident had never occurred. According to defendants, the trial court, therefore, erred in denying their motion for a directed verdict and their motion for JNOV on the issue of permanent injuries.
"The standard of review of the denial of a motion for a directed verdict and of the denial of a motion for JNOV are identical. We must determine `whether, upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in favor of the non-movant, the evidence is sufficient to be submitted to the jury.'" Shelton v. Steelcase, Inc., 197 N.C.App. 404, 410, 677 S.E.2d 485, 491 (internal citation omitted) (quoting Denson v. Richmond County, 159 N.C.App. 408, 411, 583 S.E.2d 318, 320 (2003)), disc. review denied, 363 N.C. 583, 682 S.E.2d 389 (2009).
"A motion for either a directed verdict or JNOV `should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim.'" Id. (quoting Branch v. High Rock Realty, Inc., 151 N.C.App. 244, 250, 565 S.E.2d 248, 252 (2002), disc. review denied, 356 N.C. 667, 576 S.E.2d 330 (2003)). "A `scintilla of evidence' is defined as `very slight evidence.'" Everhart v. O'Charley's Inc., ___ N.C.App. ___, ___, 683 S.E.2d 728, 735 (2009) (quoting Scarborough v. Dillard's Inc., 188 N.C.App. 430, 434, 655 S.E.2d 875, 878 (2008), rev'd on other grounds, 363 N.C. 715, 693 S.E.2d 640 (2009)).
At trial, Mrs. Springs presented sufficient evidence to permit a jury to attribute her avascular necrosis and right shoulder pain to the accident. Dr. Clark, who treated Mrs. Springs in the emergency room immediately *704 after the accident, testified that he saw no indication of advanced avascular necrosis or arthritis in Mrs. Springs' right shoulder. He diagnosed Mrs. Springs as suffering a contusion of the right shoulder, as well as a contusion of her right elbow, an acute cervical strain, and a sprained dorsal spine. Photographs taken after the accident showed extensive bruising of both of Mrs. Springs' shoulders and arms.
Dr. Kingery saw Mrs. Springs on referral from her primary care physician for treatment of the pain in her right shoulder and right elbow. X-rays of her elbow were negative, causing him to conclude that her elbow pain was the result of a contusion. The x-rays of her shoulder, however, "showed arthritis, but showed a condition called avascular necrosis as a cause for that arthritis." He gave Mrs. Springs a "diagnosis [of] progressive arthritis due to avascular necrosis of the right shoulder."
Dr. Kingery saw no reference in Mrs. Springs' records, radiographs, or MRIs indicating that Mrs. Springs had been diagnosed with avascular necrosis of the right shoulder prior to the accident on 16 June 2004. Dr. Kingery acknowledged that avascular necrosis can have different causes, but identified two possible causes for Mrs. Springs' avascular necrosis: "Trauma and in all likelihood, although I have not seen all of the evidence, prednisone usage for her MS or multiple sclerosis." Dr. Kingery was then asked, based on the facts of the collision and the examination by Dr. Clark in the emergency room, whether he had "a medical opinion [he could] state with reasonable certainty as to whether or not the collision, and the injury she received in that collision, caused the avascular necrosis." Dr. Kingery responded: "My medical opinion is that the injury she experienced in her Junein June, either caused or aggravated a condition that resulted in [her] subsequent inability to use particularly her right arm for future function."
Dr. Frederick Pfeiffer, a neurologist who had treated Mrs. Springs for nearly 20 years, also testified that he was not aware of Mrs. Springs ever having been diagnosed with avascular necrosis prior to the accident. Further, he explained:
Multiple sclerosis does not cause a vascular [sic] necrosis. There are medicines that we give that can cause a vascular [sic] necrosis, but [Mrs. Springs] hasn't had that very much. . . .
Multiple sclerosis wouldn't cause pain that hurts when you move your arms or try to hold your arms over your head.
According to Dr. Emmet Dyer, a neurosurgeon who treated Mrs. Springs, no MRI or x-ray of Mrs. Springs' shoulder that he had reviewed indicated that she ever had avascular necrosis prior to the accident. Dr. Dyer further explained that "[b]ased on a reasonable degree of medical certainty, I do think that her cervical spondylosis and resulting pain was aggravated by a rear-end accident."
Defendants, however, argue that Dr. Kingery's testimony as to the cause of Mrs. Springs' condition was merely speculative and insufficient to prove causation because other portions of his testimony "tended to show his opinion was really a guess." In support of their position, defendants cite Sabol v. Parrish Realty of Zebulon, Inc., 77 N.C.App. 680, 686, 336 S.E.2d 124, 127-28 (1985) (internal citation omitted), aff'd per curiam, 316 N.C. 549, 342 S.E.2d 522 (1986), in which the Court held: "Plaintiff must not only show that the damage might have been caused because of the defendant's negligence, but must show by reasonable affirmative evidence that it did so originate. If all that can be said is that the defendant may have done the acts which caused the injury, and it is equally true that defendant may not have, then the evidence is merely conjectural and is not sufficient to go to the jury."
In this case, in contrast to Sabol, the expert witness testimony did not suggest that two potential causes of the avascular necrosis were equally possible. Although Dr. Kingery acknowledged that, as a general matter, there are various possible causes for avascular necrosis, he testified that, in his opinion, to a reasonable degree of medical certainty, the accident caused or aggravated Mrs. Springs' condition.
This case is also unlike Azar v. Presbyterian Hosp., 191 N.C.App. 367, 663 S.E.2d 450 (2008), cert. denied, 363 N.C. 372, 678 S.E.2d *705 232 (2009), Young v. Hickory Bus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000), and Maharias v. Weathers Bros. Moving & Storage, 257 N.C. 767, 127 S.E.2d 548 (1962), the remaining cases upon which defendants rely. In Azar, the expert witness testified that the plaintiff's bedsores were "`at least one cause of infection'" and that she died "`as a result of all of [her] complications,'" but could not identify which complication was the ultimate cause of her death. 191 N.C.App. at 371-72, 663 S.E.2d at 453. In Young, the expert witness testified that there were several potential causes of the plaintiff's fibromyalgia other than her work-related back injury, but that he had not performed any testing to determine what was, in fact, the cause of her symptoms. 353 N.C. at 231, 538 S.E.2d at 915. And, in Maharias, the expert witness testified that a particular event "`could have'" caused the injury and that it was "`possible'" that it could have happened from any number of causes. 257 N.C. at 767, 127 S.E.2d at 549.
Here, by contrast, Dr. Kingery had considered the possible causes of Mrs. Springs' right arm condition and, based on his review of the facts, his treatment of Mrs. Springs, and Mrs. Springs' history, ultimately testified to a reasonable degree of medical certainty that the accident caused or aggravated Mrs. Springs' condition. This testimony was not merely conjectural, but rather was sufficient evidence of causation supporting the court's decision to send the issue to the jury. See Holley v. ACTS, Inc., 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003) (explaining that while "an expert's `speculation' is insufficient to establish causation," "medical certainty is not required"). See also Weaver v. Sheppa, 186 N.C.App. 412, 417-18, 651 S.E.2d 395, 399 (2007) (holding court erred in granting defendants' motion for JNOV where plaintiffs' expert testified to "`a high degree of certainty'" as to cause of injury), disc. review allowed, 362 N.C. 180, 657 S.E.2d 669, aff'd per curiam, 362 N.C. 341, 661 S.E.2d 733 (2008); Seay v. Wal-Mart Stores, Inc., 180 N.C.App. 432, 436, 637 S.E.2d 299, 302 (2006) ("`In order to be sufficient to support a finding that a stated cause produced a stated result, evidence on causation must indicate a reasonable scientific probability that the stated cause produced the stated result.'" (quoting Johnson v. Piggly Wiggly of Pinetops, Inc., 156 N.C.App. 42, 49, 575 S.E.2d 797, 802, disc. review denied, 357 N.C. 251, 582 S.E.2d 271 (2003))).
Defendants point to Dr. Kingery's statement on cross-examination that prednisone usage "could" have caused her avascular necrosis and argue that Dr. Kingery "presented only a choice of possibilities as to the cause of Mrs. Springs' pain." Matthews is, however, materially indistinguishable and controlling on this point.
In Matthews, 135 N.C.App. at 784-85, 522 S.E.2d at 588, a slip-and-fall case, the defendant argued that the evidence presented at trial was insufficient to warrant an instruction as to the permanency of the plaintiff's injury. The Court rejected this argument based on an expert witness' testimony that, to a reasonable degree of medical certainty, the plaintiff's fall caused her herniated disk, and she would continue to experience pain for the rest of her life as a result of the fall. Id. at 786, 522 S.E.2d at 589.
The defendant in Matthews, however, like defendants here, pointed to the expert witness' testimony on cross-examination regarding the plaintiff's prior history of back problems unrelated to the fall as "effectively nullif[ying] his testimony on direct regarding permanency and proximate cause." Id. On cross-examination, the expert witness had agreed that more likely than not the plaintiff's prior car injury would have led to future back pain and that even if she had not slipped and fallen, the plaintiff would have continued to suffer residual back pain unrelated to any fall at the defendant's store. Id. at 786-87, 522 S.E.2d at 589. This Court held that the cross-examination did not nullify the direct examination testimony because the expert witness "neither corrected nor contradicted himself in his cross-examination." Id. at 787, 522 S.E.2d at 589-90.
Here, Dr. Kingery, like the expert in Matthews, testified on direct examination to a reasonable degree of medical certainty that the accident caused or aggravated Mrs. Springs' right arm and shoulder condition. *706 The evidence defendants point to on cross-examination that steroid use "could" have caused the avascular necrosis did not "nullify" Dr. Kingery's direct testimony. Id. On direct examination, prior to giving his ultimate opinion on causation, Dr. Kingery had identified steroid use as one of two possible causes of Mrs. Springs' avascular necrosis, just as he did during cross-examination. On cross-examination, Dr. Kingery simply repeated the steroid possibility, but did not recant or in any way correct or contradict his opinion on direct examination that he believed the accident had in fact caused or aggravated the right shoulder condition.
In addition, in viewing the evidence presented at trial in the light most favorable to Mrs. Springs, we cannot consider Dr. Kingery's testimony in isolation. Dr. Pfeiffer testified that although some medicines used to treat MS can cause avascular necrosis, Mrs. Springs "hasn't had that very much." Thus, although Dr. Kingery acknowledged that avascular necrosis can come from either trauma or steroids, Dr. Pfeiffer's testimony would permit a jury to find that Mrs. Springs had not taken enough steroids to cause avascular necrosis, leaving the trauma from the accident as the likely cause.
Defendants also point to other evidence in the record that they contend supports their contention that Mrs. Springs' condition was not caused by the accident and that there were other "credible alternative explanations." This argument disregards the standard of review: "[O]n a motion for directed verdict[,] conflicts in the evidence unfavorable to the plaintiff must be disregarded." Polk v. Biles, 92 N.C.App. 86, 88, 373 S.E.2d 570, 571 (1988), disc. review denied, 324 N.C. 337, 378 S.E.2d 798 (1989). Conflicts in the evidence and contradictions within a particular witness' testimony are "for the jury to resolve." Shields v. Nationwide Mut. Fire Ins. Co., 61 N.C.App. 365, 374, 301 S.E.2d 439, 445, disc. review denied, 308 N.C. 678, 304 S.E.2d 759 (1983). Accordingly, the trial court did not err in denying defendants' motion for a directed verdict and in instructing the jury on the issue of permanent injuries.[2]

II
Defendant TMOC challenges the punitive damages award entered against it. Under N.C. Gen.Stat. § 1D-15(a) (2009), "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud[;] (2) Malice[; or] (3) Willful or wanton conduct." The plaintiff "must prove the existence of an aggravating factor by clear and convincing evidence." N.C. Gen. Stat. § 1D-15(b). In this case, Mrs. Springs contended that TMOC engaged in willful or wanton conduct.
After the jury awarded punitive damages in the amount of $250,000.00, TMOC filed a motion for JNOV, asserting with respect to the punitive damages award that "[t]here was no competent evidence of any willful or wanton conduct which would rise to a level allowing any punitive damages." N.C. Gen. Stat. § 1D-50 provides: "When reviewing the evidence regarding a finding by the trier of fact concerning liability for punitive damages in accordance with G.S. 1D-15(a), or regarding the amount of punitive damages awarded, the trial court shall state in a written opinion its reasons for upholding or disturbing the finding or award." We agree with TMOC's argument on appeal that the trial court failed to comply with N.C. Gen. Stat. § 1D-50 because it did not set out in a written opinion its reasons for upholding the jury's punitive damages award.
*707 Our Supreme Court addressed the requirements of N.C. Gen.Stat. § 1D-50 in Scarborough v. Dillard's, Inc., 363 N.C. 715, 722-23, 693 S.E.2d 640, 644-45 (2009):
[T]he language of [this] statute does not require findings of fact, but rather that the trial court "shall state in a written opinion its reasons for upholding or disturbing the finding or award. In doing so, the court shall address with specificity the evidence, or lack thereof, as it bears on the liability for or the amount of punitive damages." N.C.G.S. § 1D-50. That the trial court utilizes findings to address with specificity the evidence bearing on liability for punitive damages is not improper; the "findings," however, merely provide a convenient format with which all trial judges are familiar to set out the evidence forming the basis of the judge's opinion. The trial judge does not determine the truth or falsity of the evidence or weigh the evidence, but simply recites the evidence, or lack thereof, forming the basis of the judge's opinion. As such, these findings are not binding on the appellate court even if unchallenged by the appellant. These findings do, however, provide valuable assistance to the appellate court in determining whether as a matter of law the evidence, when considered in the light most favorable to the nonmoving party, is sufficient to be considered by the jury as clear and convincing on the issue of punitive damages.

(Emphasis added.)
This Court recently applied Scarborough and N.C. Gen.Stat. § 1D-50 in Hudgins, ___ N.C.App. at ___, 694 S.E.2d at 447. In Hudgins, as in this case, the trial court denied the defendants' motion for JNOV as to punitive damages, but it did not enter a written opinion stating its reasons for upholding the award. Id. at ___, 694 S.E.2d at 447. On appeal, this Court held: "The case sub judice does not contain a written opinion stating the trial court's reasons for upholding the final award. Pursuant to the Supreme Court's express holding [in Scarborough] and clear instruction based upon a statutory mandate, we are constrained to reverse the trial court's denial of defendants' motion for JNOV with respect to punitive damages, and we remand the matter for the limited purpose of entering a written opinion as to those damages in view of Scarborough." Id. at ___, 694 S.E.2d at 447-48. Because of the absence of a written opinion and the need for remand, the Court did not address the merits of the defendants' argument that there was insufficient evidence to support the punitive damages award.
We are bound by Scarborough and Hudgins. Since the trial court's order addressing defendants' motion for JNOV simply stated that the motion was denied without complying with N.C. Gen.Stat. § 1D-50, we must remand to allow the trial court to enter a written opinion setting out its reasons for upholding the punitive damages award. We cannot address the merits of TMOC's arguments regarding the sufficiency of the evidence in the absence of the required written opinion.[3]

III
Lastly, defendants argue that the trial court violated N.C. Gen.Stat. § 7A-305(d) (2009) by reimbursing Mrs. Springs for certain expert witness fees. In her motion for costs, Mrs. Springs sought a total of $58,099.92: $44,854.61 for subpoenaed expert witnesses' fees for time spent in trial preparation and at trial, $7,817.64 for deposition expenses, $740.75 for mediation expenses, $110.00 for a filing fee, and $4,576.92 for trial exhibits. The trial court granted her motion and awarded costs in the amount of $58,034.17.[4]
Defendants contend that under the amended version of N.C. Gen.Stat. § 7A-305(d), *708 effective 1 August 2007, they are liable only for the actual time spent by the experts testifying on the stand and that the trial court thus erred to the extent that its award covered the experts' time spent in preparation or waiting to testify. N.C. Gen.Stat. § 7A-305(d) sets out the costs that the trial court is "required to assess." Lord v. Customized Consulting Specialty, Inc., 164 N.C.App. 730, 734, 596 S.E.2d 891, 895 (2004). Under the recently added N.C. Gen. Stat. § 7A-305(d)(11), a trial court is required to assess costs for "[r]easonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings." We agree with defendants that, given the unambiguous language used, N.C. Gen.Stat. § 7A-305(d)(11) refers to an expert witness' actual time testifying and not any other time.
N.C. Gen.Stat. § 7A-305(d) may not, however, be read alone, but rather must be "read in conjunction with" N.C. Gen.Stat. § 7A-314 (2009), which governs fees for witnesses. Morgan v. Steiner, 173 N.C.App. 577, 583, 619 S.E.2d 516, 520 (2005), disc. review denied, 360 N.C. 648, 636 S.E.2d 808 (2006). N.C. Gen.Stat. § 7A-314(a) provides that a witness under subpoena "shall be entitled to receive five dollars ($5.00) per day, or fraction thereof, during his attendance." Logically, as Morgan assumed, this provision allows for a fee for attendance at trial. 173 N.C.App. at 583-84, 619 S.E.2d at 520-21 ("Section 7A-314(a) provides for the payment of witnesses who are in attendance at trial pursuant to a subpoena.").
N.C. Gen.Stat. § 7A-314(d) "modifies" § 7A-314(a) by permitting the trial court, in its discretion, to increase a subpoenaed expert witness' compensation for attendance at trial. State v. Johnson, 282 N.C. 1, 27-28, 191 S.E.2d 641, 659 (1972). See N.C. Gen.Stat. § 7A-314(d) ("An expert witness. . . shall receive such compensation and allowances as the court . . ., in its discretion, may authorize."). As this Court has explained, "[t]he public policy" underlying the rule allowing payment of a fee to subpoenaed witnesses, including expert witnesses, "is that a witness should be compensated for what he is obligated by the State to do." Greene v. Hoekstra, 189 N.C.App. 179, 181, 657 S.E.2d 415, 417 (2008).
Defendants' argument addresses only N.C. Gen.Stat. § 7A-305(d)(11) and not N.C. Gen. Stat. § 7A-314. If we were to accept defendants' contention that a trial court may only include within an award of costs expert witness compensation for time spent actually testifying, we would effectively render meaningless N.C. Gen.Stat. § 7A-314(d). Under established principles of statutory construction, "[a] statute is not deemed to be repealed merely by the enactment of another statute on the same subject. The later statute on the same subject does not repeal the earlier if both can stand, or where they are cumulative, and the court will give effect to statutes covering the same subject matter where they are not absolutely irreconcilable and when no purpose of repeal is clearly indicated." Person v. Garrett, 280 N.C. 163, 165-66, 184 S.E.2d 873, 874 (1971).
Since, when the General Assembly amended N.C. Gen.Stat. § 7A-305, it left N.C. Gen. Stat. § 7A-314 intact, it must have intended that § 7A-314 continue to have meaning. Significantly, N.C. Gen.Stat. § 6-20 (2009) specifically anticipates that N.C. Gen.Stat. § 7A-305(d) will not necessarily be the only statute addressing a trial court's authority to award costs: "Costs awarded by the court are subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d), unless specifically provided for otherwise in the General Statutes." (Emphasis added.) This Court has, in fact, recently held: "As § 7A-305(d)(11) now codifies the trial court's authority to award discretionary expert witness fees (formerly read into subsection (1)) the statutory provision for expert witness fees must likewise be read in conjunction with § 7A-314." Jarrell v. Charlotte-Mecklenburg Hosp. Auth., ___ N.C.App. ___, ___, 698 S.E.2d 190, 193 (2010).
We believe that N.C. Gen.Stat. § 7A-305(d)(11) and N.C. Gen.Stat. § 7A-314 can both be given effect. If a cost is set forth in N.C. Gen.Stat. § 7A-305(d), "`the trial court *709 is required to assess the item as costs.'" Priest v. Safety-Kleen Sys., Inc., 191 N.C.App. 341, 343, 663 S.E.2d 351, 353 (2008) (quoting Miller v. Forsyth Mem'l Hosp., Inc., 173 N.C.App. 385, 391, 618 S.E.2d 838, 843 (2005)). Accordingly, under N.C. Gen.Stat. § 7A-305(d)(11), a trial court is required to include within an award of costs expert fees for time spent by the witness actually testifying. In addition, however, under N.C. Gen. Stat. § 7A-314(d), the trial court has discretion to award expert fees for an expert witness' time in attendance at trial even when not testifying. Further, the trial court has discretion to award travel expenses for experts as provided under N.C. Gen.Stat. § 7A-314(b).
Nevertheless, we find no authority in the current statutes authorizing the trial court to assess costs for an expert witness' preparation time. Despite Mrs. Springs' argument to the contrary, N.C. Gen.Stat. § 7A-305(d)(1), which provides for an award of "[w]itness fees, as provided by law," does not authorize the trial court to award any fees for expert witnesses. It is well established that "a section of a statute dealing with a specific situation controls, with respect to that situation, other sections which are general in their application. In such situation the specially treated situation is regarded as an exception to the general provision." State ex rel. Utils. Comm'n v. Lumbee River Elec. Membership Corp., 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969) (internal citation omitted). Consequently, § 7A-305(d)(11) controls over the more general § 7A-305(d)(1).
The trial court erred to the extent that it awarded as costs expert witness fees not specifically provided for by N.C. Gen.Stat. § 7A-305(d)(11) or § 7A-314. We, therefore, reverse the award of costs and remand for reconsideration in light of the controlling statutes.
Affirmed in part; reversed and remanded in part.
Judges CALABRIA and STEPHENS concur.
NOTES
[1] Although defendants, at times, articulate the issue as an error in the jury instructions, it is apparent from defendants' arguments that they are actually contending that Mrs. Springs failed to prove causation.
[2] On this issue, Mrs. Springs argues alternatively that the trial court erred in excluding portions of the testimony of Dr. Dyer and that the excluded evidence would have provided further support regarding causation. Because that testimony was never considered by the jury, this argument cannot provide an alternative ground for upholding the decision below, but rather is an argument for allowing a new trial. As a result, it represents a cross-appeal for which Mrs. Springs was required to file an appellant's brief. Williams v. N.C. Dep't of Econ. & Cmty. Dev., 119 N.C.App. 535, 539, 458 S.E.2d 750, 753 (1995). Since she did not file an appellant's brief and we have upheld the trial court's decision based on the existing evidence, we do not address this issue.
[3] On this issue, Mrs. Springs also contends the trial court should have allowed her to present evidence of additional collisions caused by Napier after her collision. Although Mrs. Springs offers this argument as a basis for upholding the punitive damages award, we fail to see how evidence never heard by the jury can be used to support the jury's verdict. This argument might, if accepted, be a basis for a new trial and, thus, should have been the subject of a cross-appeal and not just a cross-assignment of error.
[4] Although defendants generally state in their appellate brief that the trial court was not authorized to award "`additional cost[s]'" (which, in Mrs. Springs' motion, referred to the filing fee and exhibit costs), defendants do not articulate any basis for overturning the award as to those costs. Defendants only specifically challenge the award with respect to costs for expert witnesses. We, therefore, address solely this issue and express no opinion as to any other issues defendants could have raised.