An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-659
NORTH CAROLINA COURT OF APPEALS

Filed: 6 January 2015

SHERIE POWELL,
    Plaintiff,

v.                                    Wake County
                                      No. 12 CVS 16552

EMILY CHRISTOPHERSON and UNNAMED
INSURANCE COMPANY,
    Defendants.


Appeal by Defendant Emily Christopherson from judgment entered 3 December 2013 and order entered 5 March 2014 by Judge Robert F. Johnson in Wake County Superior Court. Heard in the Court of Appeals 20 October 2014.


*Glenn, Mills, Fisher & Mahoney, P.A., by Carlos E. Mahoney, for Plaintiff.*

*Parker Poe Adams & Bernstein LLP, by Jonathan E. Hall and Michael J. Crook, for Defendant.*


STEPHENS, Judge.


*Factual and Procedural Background*

On 29 July 2007, Defendant Emily Christopherson was distracted as she approached an intersection and failed to see the red traffic light for her direction of travel. As a result,

Defendant's car collided with the car driven by Plaintiff Sherie Powell who had a green traffic signal for her direction of travel and was driving through the intersection. Immediately after the collision, Plaintiff complained of left shoulder and neck pain. X rays taken during a hospital evaluation were negative, and Plaintiff was released the same day. Plaintiff later saw a chiropractor, who provided treatment in the form of mechanical traction and a chiropractic adjustment of her neck.

At the time of the collision, Plaintiff worked full time for the United States Postal Service at a mail-handling facility. She continued to work without any restrictions until an on-the-job accident on 3 December 2007 in which Plaintiff injured her left shoulder. At a 14 December 2007 visit to Raleigh Orthopaedic Clinic, Plaintiff reported pain and burning in areas of her shoulder and neck. Dr. Hadley Callaway evaluated Plaintiff for a rotator cuff injury and prescribed a brief course of physical therapy.

In January 2009, Plaintiff presented to Dr. Callaway with symptoms the doctor believed were likely related to a cervical spine issue, rather than to Plaintiff's work injury. A cervical magnetic resonance imaging ("MRI") study revealed a Chiari I malformation at the base of Plaintiff's skull and an

accompanying spinal cord syrinx. Dr. Callaway immediately referred Plaintiff to Dr. Peter Grossi, a neurosurgeon, who ultimately performed three surgical procedures on Plaintiff.[1] Plaintiff continued to experience various residual symptoms, including headaches and pain in her left shoulder and behind her left ear. As a result, on 30 July 2009, Dr. Grossi referred Plaintiff to a neurologist, Dr. Timothy Collins, who specializes in pain management and treating headaches. Dr. Collins began treating Plaintiff in September 2009, and they continued regular appointments up until the time of trial. Dr. Collins testified that, "[r]eviewing [Plaintiff's medical] records led me to have an opinion that her accident was the most likely trigger for the symptoms she had that would have led to discovery of the Chiari malformation."

On 28 November 2012, Plaintiff filed a complaint alleging that Defendant's negligence caused the 29 July 2007 car

---

[1] Dr. Grossi testified that a Chiari I malformation is a congenital anatomical abnormality in which the cerebellum, which is located at the base of the brain, extends below the skull into the space where the brain joins the spinal cord. A Chiari I malformation is usually asymptomatic for many years, but often begins to cause neurological symptoms either in adolescence or in the mid- to late 30s. A syrinx is a balloon of spinal fluid which collects inside the spinal cord as a result of a Chiari I malformation. A syrinx creates outward pressure on the spinal cord which results in neurologic deficits.

collision which in turn proximately caused Plaintiff to suffer permanent injuries, including her spinal condition and associated pain and suffering. Defendant stipulated that her negligence had caused the collision, but disputed Plaintiff's allegation that the collision had proximately exacerbated or activated her pre-existing congenital Chiari I malformation and syrinx.

The matter came on for trial in November 2013. At the close of Plaintiff's evidence, Defendant moved for a directed verdict in her favor on the issue of whether Defendant's negligence had caused Plaintiff's injuries. The trial court denied that motion, and Defendant presented her case. Defendant then renewed her motion for directed verdict which the trial court again denied. Ultimately, the jury returned a verdict in favor of Plaintiff, awarding $500,000.00 in damages for personal injury. The trial court entered judgment for Plaintiff on 3 December 2013. On 6 December 2013, Defendant moved for judgment notwithstanding the verdict ("JNOV"), or, in the alternative, for a new trial, which the trial court denied following a hearing. The ruling was reduced to writing and filed on 5 March

2014. From the judgment entered 3 December 2013 and the order denying her motion for JNOV, Defendant appeals.[2]

*Discussion*

On appeal, Defendant argues that the trial court erred in (1) denying her motions for a directed verdict and for JNOV, and refusing to permit Defendant to (2) cross-examine Plaintiff about her admitted marijuana use and to (3) impeach Plaintiff with her prior inconsistent statements. We find no error.

*I. Motions for directed verdict and JNOV*

> In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which

---

[2] Defendant filed her notice of appeal on 11 February 2013, after entry of the judgment, but before the trial court's written order denying her motion for JNOV was entered. A party is "entitled to file and serve written notice of appeal any time after [a] judgment [is] rendered in open court." *Merrick v. Peterson*, 143 N.C. App. 656, 660, 548 S.E.2d 171, 174, *disc. review denied*, 354 N.C. 364, 556 S.E.2d 572 (2001); *see also Abels v. Renfro Corp.*, 126 N.C. App. 800, 804, 486 S.E.2d 735, 738 (holding that rendering of an order denying a motion for JNOV "commences the time when notice of appeal *may* be taken by filing and serving written notice, while entry of an order initiates the thirty-day time limitation within which notice of appeal *must* be filed and served") (citations omitted; emphasis in original), *disc. review denied*, 347 N.C. 263, 493 S.E.2d 450 (1997). Further, Defendant's notice of appeal specifically designates that appeal is taken from both the judgment and the order denying her motion for JNOV, complying with N.C.R. App. P. 3(d) and vesting this Court with jurisdiction to consider the judgment and the order. *See Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 347, 666 S.E.2d 127, 133 (2008), *disc. review denied*, 363 N.C. 260, 677 S.E.2d 461 (2009).

> supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving [any] contradictions, conflicts, and inconsistencies in the non-movant's favor.

*Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989) (citation omitted). "A motion for either a directed verdict or JNOV should be denied *if there is more than a scintilla of evidence supporting each element* of the non-movant's claim." *Springs v. City of Charlotte*, 209 N.C. App. 271, 275, 704 S.E.2d 319, 323 (2011) (citations and internal quotation marks omitted; emphasis added). "On appeal the standard of review for a [ruling on a motion for] JNOV is the same as that for a directed verdict, that is whether the evidence was sufficient to go to the jury." *Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 136 N.C. App. 493, 498-99, 524 S.E.2d 591, 595 (2000) (citation omitted). "Proximate cause is ordinarily a jury question." *Turner*, 325 N.C. at 162, 381 S.E.2d at 712 (citations omitted).

Because Defendant stipulated to her negligence in this case, the primary question before the jury was whether that negligence was the proximate cause of Plaintiff's injuries. Defendant contends that Dr. Collins' expert medical opinion that

the car collision caused the onset of Plaintiff's symptoms was not competent evidence and that, as a result, there was insufficient evidence of causation to send the case to the jury. Specifically, Defendant asserts that Dr. Collins' causation opinion was improperly based on (1) mere speculation or (2) solely a temporal relationship.

> Due to the complexities of medical science, particularly with respect to diagnosis, methodology and determinations of causation, this Court has held that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. However, when such expert opinion testimony is based merely upon speculation and conjecture, it can be of no more value than that of a layman's opinion. As such, it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. Indeed, this Court has specifically held that an expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility.

*Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000) (citations and internal quotation marks omitted).

Further, "[i]n a case where the threshold question is the cause of a controversial medical condition, the maxim of *post*

*hoc, ergo propter hoc*[] is not competent evidence of causation." *Id.* at 232, 538 S.E.2d at 916 (internal quotation marks omitted). "The maxim *post hoc, ergo propter hoc*[] denotes the fallacy of confusing sequence with consequence, and assumes a false connection between causation and temporal sequence." *Id.* (citation, internal quotation marks, and ellipsis omitted). Where such a temporal relationship is the *sole* basis for a physician's opinion on causation, the physician's causation opinion is not competent evidence. *See id.* For example, in *Young*, our Supreme Court held that a physician's expert medical opinion regarding causation was not competent where that physician's

> *total* reliance on this premise [*post hoc, ergo propter hoc* wa]s shown near the end of his deposition testimony wherein he states: "I think that she does have fibromyalgia and I relate it to the accident primarily because, as I noted, it was not there before and she developed it afterwards. And that's the only piece of information that relates the two."

*Id.* (emphasis added); *see also Carr v. Dep't of Health and Human Servs.*, 218 N.C. App. 151, 156, 720 S.E.2d 869, 874 (2012) (rejecting an argument asserting improper reliance on *post hoc, ergo propter hoc* where the physician testified that, "although 'a lot of it is based on timing,' his opinion was based on the

mechanism of injury as well as the temporal relationship between the incident and symptoms").

When asked about the basis of his opinion regarding causation, Dr. Collins testified:

> Q. Okay. How did you come to an opinion as to whether or not [Plaintiff] incurred an injury due to the motor vehicle collision of July 29th, 2007?
>
> A. From discussing with the — from discussions with the patient, in the course of providing her care, and from review of Dr. Grossi's clinic notes.

Dr. Collins went on to explain that he had also relied on Dr. Callaway's notes, the police report on the collision, his own experience in treating other patients with Chiari I malformations, and his review of the relevant medical literature to form his causation opinion:

> That — that takes a bit of an explanation. Congenital Chiari malformations generally don't produce symptoms until people in — are in their late 20s. I think the average age of onset is around 35.[3]
>
> There is medical literature looking at the things that precipitate symptoms in Chiari malformation. And upwards of 40 percent of patients with a Chiari malformation start having symptoms after some sort of mild head trauma. In [Plaintiff]'s specific case, she was in a car accident. Her car was struck

---

[3] Plaintiff was 33 years old at the time of the collision.

> from the passenger side, according to the police report, while she was driving, which would have caused her head and neck to flop back and forth from one side to the other, putting a lot of unnatural strain on a structure that's really not put together in a way to handle that. And her anatomy inside was already abnormal. Her — her brain — her brain stem and her upper cervical spine weren't normal, and because of this trauma, started giving her symptoms.

Thus, Dr. Collins' causation opinion was not "based merely upon speculation and conjecture[.]" *See Young*, 353 N.C. at 230, 538 S.E.2d at 915. Rather, his opinion that "[i]t's more likely than not that the accident triggered the symptoms that [Plaintiff] has from her Chiari malformation" was based upon examination of Plaintiff, review of her medical records, relevant medical literature, and, importantly, the mechanism of injury, as well as Dr. Collins's own skill and experience. Further, although Dr. Collins did note that Plaintiff's symptoms began to appear only after the collision, his causation opinion was plainly not based *solely* on this temporal relationship, but instead upon all of the proper bases noted *supra*. In sum, Dr. Collins's expert medical opinion on causation was competent and constituted "more than a scintilla of evidence supporting" the sole disputed element of Plaintiff's personal injury claim. *See Springs*, 209 N.C. App. at 275, 704 S.E.2d at 323. Accordingly,

the trial court did not err in denying Defendant's motions for directed verdict and JNOV.

*II. Cross-examination regarding Plaintiff's misdemeanor conviction*

Defendant next argues that the trial court erred in prohibiting her from cross-examining Plaintiff about Plaintiff's marijuana use at the time of the collision. Defendant misperceives the trial court's ruling, which was not error.

On appeal, Defendant asserts that she was prevented from cross-examining Plaintiff about Plaintiff's marijuana use in 2007, and that the trial court only permitted Defendant to cross-examine Plaintiff about what Plaintiff told her doctors regarding her marijuana use. However, a careful review of the transcript reveals that Plaintiff did not object to Defendant's inquiry about her marijuana use in 2007, but rather only to a question about a purported misdemeanor conviction for possession of marijuana:

> Q. Ma'am, were you also using marijuana during this time [in 2007]?
>
> A. No, I was not.
>
> Q. Okay. You were convicted of possession of marijuana in November of 2007, weren't you?
>
> [PLAINTIFF'S COUNSEL]: Objection.

The trial court then sent the jury out of the courtroom, and, on *voir dire*, Defendant's counsel asked Plaintiff about purported drug possession and paraphernalia charges in Haywood County, of which Plaintiff denied any knowledge. The court then engaged in a lengthy exchange with Defendant's counsel regarding Rule of Evidence 609, and established that the marijuana possession conviction was a Class 3 misdemeanor and that the drug paraphernalia charge was dismissed. *See* N.C. Gen. Stat. § 8C-1, Rule 609(a) (2013) ("For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted if elicited from the witness or established by public record during cross-examination or thereafter.").

> THE COURT: Under Rule 609 you may cross-examine her about a felony, a Class 1, a Class A1 or a Class 2 misdemeanor. Cross-examin[ing] her about a Class 3 misdemeanor [such as Plaintiff's marijuana possession conviction] is not allowed and the objection will be sustained.
>
> [PLAINTIFF'S COUNSEL]: Your Honor, there are a couple things that I would like to say in reference to this.
>
> I noticed on the second page — and I am not a criminal attorney either.

THE COURT: On the second page there was a charge of possession of drug paraphernalia which is a Class 1 misdemeanor. But counsel has indicated that that was dismissed as part of a plea arrangement.

[DEFENDANT'S COUNSEL]: Yes, sir. That's what it appears.

THE COURT: Therefore, if it was dismissed you may not ask her about it. He can ask about convictions. I don't mean to cut you off, [Plaintiff's counsel], if that's where you were heading.

[Plaintiff's counsel moves to strike, requests an instruction for the jury to disregard the question and response about the conviction, and moves for a mistrial.]

THE COURT: At this point[,] motion for mistrial will be denied. I don't think we are there. The question was asked, the objection. I sent the jury out. I will bring the jury in, I will sustain the objection, I will instruct them to disregard the question, that they are not to draw any inference from it.

. . . .

THE COURT: The objection is sustained.

[DEFENDANT'S COUNSEL]: Okay. Now, your Honor, so you know where we are going next, okay? *She did tell her doctors after this accident that she continues to use marijuana.* And that's relevant because of the nature of her symptoms.

THE COURT:                    *You    may    cross-
examine her [about] what she told her
doctors.*

[DEFENDANT'S COUNSEL]:    Yes, sir.

THE COURT:                    *You may not cross-
examine her about —*

[DEFENDANT'S COUNSEL]:    *A conviction.*

THE COURT:                    *—    possession    of
marijuana    and    alleged    conviction    of
paraphernalia.    That is the ruling of the
[c]ourt.*

[DEFENDANT'S COUNSEL]:    Yes,    sir.    And    we
will abide by that ruling.    Yes, sir.

[PLAINTIFF'S COUNSEL]:    And    your    Honor,    as
it relates to what she told her doctors as
it    relates    to    marijuana    or    any    other
circumstance, what we would object to is the
relevance as it relates to the motor vehicle
collision unless they are declaring that the
motor    vehicle    collision    and    the    marijuana
are related and the fact of the symptoms —
symptomology    that    she    experienced    after    the
motor    vehicle    collision    which    again    has
nothing to do with marijuana.

THE COURT:                    *Well — and I don't
know what context the question will come up
that she — what she told the doctor in terms
of using marijuana, if he was asking her for
a history of my medications that she may
have    used    or    anything    relative    to    his
treatment.    And that would go toward the
basis    of    any    opinions    that    a    medical
professional    would    reach,    I    would    think.
And I don't know if that's why he wants to
ask the question or not.    But if he asks the
questions and there is an objection I will
rule on it at the time.    If I need to send*

the jury out I will send the jury out.
Bring the jury in.

These are the only portions of the transcript cited by Defendant in support of her argument. As the discussion among counsel and the court makes clear, Defendant only asked about the permissibility of cross-examining Plaintiff regarding what she told her doctors about marijuana use. The trial court responded that asking about Plaintiff's conviction was prohibited, but that Defendant could ask about Plaintiff's conversations with her doctor regarding marijuana use, noting that if objections *were* made to such questions, the court would rule on them at that time.

Following a recess, Defendant's counsel again raised the issue of cross-examining Plaintiff about marijuana use, observing that Plaintiff's medical records included a social history which stated that Plaintiff "does endorse marijuana use."[4] The trial court first noted, correctly, that "endorsing" marijuana use was different from "using" marijuana. In addition, when the trial court asked Defendant's counsel for what permitted purpose under Rule of Evidence 404(b) such "bad act" evidence was admissible, Defendant's counsel could not

---

[4] We observe that Defendant has not cited and does not discuss this portion of the transcript in her brief.

provide an answer and additionally revealed that the doctor to whom the "endorse[s] marijuana use" statement was made was not even a witness at the trial. The trial court thus prohibited cross-examination of Plaintiff about any statements regarding marijuana use she might have made to her physicians.

On appeal, however, Defendant makes no argument that the trial court erred in refusing to permit cross-examination under Rule 404(b) regarding the statement in Plaintiff's medical record. Further, contrary to Defendant's assertions, Defendant was not prohibited from asking Plaintiff about Plaintiff's marijuana use in 2007. As noted *supra*, that question was asked without objection, and Plaintiff answered it. This argument is overruled.

*III. Impeachment with Plaintiff's prior inconsistent statements*

In her final argument, Defendant contends that the trial court erred in refusing to allow Defendant to cross-examine Plaintiff regarding Plaintiff's prior inconsistent statements. In support of this contention, Defendant returns to the issue of Plaintiff's alleged marijuana use and conviction.

Defendant notes that, "during *voir dire* and outside the presence of the jury," Plaintiff responded to a question about whether she had ever been convicted of marijuana possession by

saying, "Not that I know of." We first observe that Plaintiff was never inconsistent in her statements regarding convictions for drug possession. Both on *voir dire* and in her deposition, Plaintiff consistently stated that she had not been convicted of drug possession, although in her deposition she admitted that she had received a "ticket" for possession of drug paraphernalia. She did not, as Defendant asserts, make any inconsistent statement to her physicians. As discussed *supra*, Plaintiff's medical record indicates only that she "endorses marijuana use" and says absolutely nothing about any convictions for marijuana possession. Further, as Defendant acknowledges, Plaintiff's denials of having been convicted of marijuana possession were statements made during the *voir dire* on admissibility under Rule 609 of evidence about Plaintiff's Class 3 misdemeanor conviction of marijuana possession, not statements made during Plaintiff's testimony. As previously discussed, the trial court properly ruled that Defendant could not cross-examine Plaintiff about her Class 3 misdemeanor conviction for possession. This argument is overruled.

NO ERROR.

Chief Judge MCGEE and Judge DIETZ concur.

Report per Rule 30(e).